GEORGE MANSFIELD vs. THE STEAM SCHOONER DESPATCH.

July 16, 1908.

*Receipt in full—Understanding*: A pay roll printed in blank containing in addition to specific words of discharge the words "and in full of all demands of whatsoever kind or nature against the above named vessel, her owners or officers," although *prima facie* a receipt in full, is subject to explanation as to the understanding with which it is signed.

*Admiralty—Coasting service, Territory of Hawaii—Contract of service—First Mate—Pilot*: An engagement of a person holding a license as master and pilot, as first mate of a vessel engaged in the inter-island coasting service of the Territory of Hawaii, does not carry with it an engagement of such a person as pilot also.

*Same—Question of additional compensation of first mate engaged as pilot subsequent to his engagement as first mate*: Such person, engaged as first mate on such a vessel, upon being requested after the first voyage out of the port of Honolulu and back, to perform the duties of pilot out of and into such port thereafter, and consenting to do so, is entitled to reasonable compensation for such pilotage service in addition to his pay as first mate.

*Same—Libel for pilotage—Estoppel*: The libelant presented his bill for services as pilot and afterwards sued for a larger amount. *Held*, that the amount of the bill may be taken as a reasonable appraisement of the value of the services rendered, there being no allegation of mistake.

*In Admiralty*: Libel for compensation.

*Geo. A. Davis*, Proctor for Libelant.
*E. M. Watson*, Proctor for Libellee.

Dole, J. The libelant shipped as second mate of the libellee, running between the port of Honolulu and the port of Eleele, Kauai, in the month of February of this year. After one voyage he was promoted to the position of first mate at a salary of $95.00 a month, and made one voyage. On going out of the harbor on his second voyage as first mate, the master called him up on the bridge and stated to him that the custom house authorities had been investigating and that it was necessary that

the vessel should be taken out of the port of Honolulu and in such port by a licensed pilot and requested him to perform such services thereafter. The master held a license as master but not as pilot for the port of Honolulu; libelant held a license as master and pilot covering such port. On or about the 4th day of June, libelant presented a bill to the agent of the vessel in Honolulu for two hundred and fifty dollars for extra services as pilot, which was refused and his relation with the vessel was terminated at that time.

Libelant alleges in the libel and testifies that at the time the master requested him to perform pilot services the master said he would receive some compensation for such services; that several times before the 4th of June libelant spoke to him on the subject and he reiterated such promise. The master denies having made any such promise or any expression of such a character. When the libelant shipped as second mate he knew that the master had no license as pilot for the port of Honolulu and also knew that he would be required to have a pilot in going out and in at such port. There is no evidence supporting the libelant's allegation and testimony that the master promised him compensation for pilot services.

I find from the evidence that there is no custom in the inter-island coasting service which requires that a first officer should have a pilot's license; also that there was no engagement of libelant as pilot for the libellee until the beginning of his second voyage as first mate. When libelant was paid off on or about the 4th of June, the pay roll on a printed form contained the following words: "Received from steamer Despatch and owners, Voyage ——, the sums set opposite our names respectively, in full of all demands for services rendered, as specified below, and in full of all demands of whatsoever kind or nature against the above named vessel, her owners or officers." The line of such pay roll signed by libelant gives his name, his services as "mate," date, time, rate, amount, overtime, etc., etc. This receipt was contended by the claimant to be a receipt in full. The libelant stated on the witness stand that he read this

over carefully before signing it and signed it from the fact that it referred to his services as "mate," there being no reference to any other kind of services, and that the sentence "in full of all demands of whatsoever kind or nature against the above named vessel," referred in his understanding to items of overtime. I find that such a receipt, although *prima facie* a receipt in full for all demands, is subject to explanation and to the understanding under which it was signed by the person signing it and that in this case it is not a discharge against him for any services except those mentioned in the pay roll, which are services of mate. It is interesting to notice in this connection that in the pay roll of the company dated June 13th, in which a new first mate,—Rosehill, appears, he is described in the column of services as "1st mate and pilot."

Although seamen are not required to be shipped under articles in the coasting service, it would be an easy matter to use a simple form by which the agreement of employment between a ship and a seaman would be in black and white, and would thereby save some misunderstandings and perhaps litigation.

Has libelant any claim against the libellee for extra services as pilot? This question is rendered more difficult from the fact that the master denies the allegation and testimony of the libelant as to a promise of compensation and there is his word against the word of the libelant. Is there then a case for the libelant on the ground of a contract for extra services as *quantum meruit?* I think there is, because as found above, there was a distinct engagement of the libelant by the agent of the libellee for services as pilot, which was not within the original contract, and although the master took the ground that libelant was engaged as pilot and even acted as pilot on his first voyage as first mate, which is unsupported and fully disproved, he is chargeable with the knowledge that such was not the fact and that a mere engagement in the Hawaiian coasting service of a man as first officer is not an engagement of him as pilot. *Bett v. Cook,* 3 Fed. Cas. (1,282) 152. The presumption of

law is that for the performance of valuable services a compensation is due, and there is no other presumption or evidence in this case sufficient to overcome such presumption. *Oliver v. Vernon,* 18 Fed. Cas. (10,501) 673, 677.

· A man who holds a license as master and as pilot holds a certificate of two distinct qualifications which are valuable assets to him and he is entitled to have them so considered, and it is not to be tolerated that a corporation shall engage a man for a service under one of these qualifications and then hold him to the other without any agreement or local custom to that effect. The services of pilotage in and out of the harbor of Honolulu, although in relation to a vessel of the size of the Despatch are not to be compared with the responsibility of pilotage in some other ports or with the responsibility in the port of Honolulu in the case of a very large ship, yet it is a duty which carries an important responsibility with it; a man who is qualified to assume such responsibility has obviously prepared himself therefor by study and experience and when his service is valuable to the party for whom it is performed it should be specially compensated, unless it is covered by an agreement.

ʻ The libelant's original estimate as shown by his bill is two hundred and fifty dollars. He sued for five hundred dollars, but under the case of *Lorenzen v. The Clavering,* 2 U. S. Dis. Ct. Haw., 32, his deliberate estimate of the value of his services estops him from claiming anything beyond it, there being no mistake alleged. The master of the Despatch testified that such services, together with the services of first mate, might be worth anything from one hundred and ten to one hundred and twenty-five dollars a month. This would represent a remuneration above the wages of first mate of a figure running from fifteen to thirty dollars a month, which for three months and a half would represent the sum of one hundred and five dollars.

The Hawaiian government estimates such services in relation to the class of vessels that include the Despatch, to be worth five cents a ton of the register of the vessel piloted. Revised Laws, 1905, sec. 550. It is in evidence that the Despatch

measures 698 tons,—supposedly gross measurement; this would give her 539 tons net, which at five cents a ton would be $26.95 for each service, making for the fifty-one occasions testified to, $1,374.45, which would be the amount an official pilot would be entitled to. I find that two hundred and fifty dollars, the amount first demanded by the libelant, to be not only a reasonable but a conservative charge for the services rendered, and award such amount to libelant with costs.